UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
Frederick Pereira,

      Petitioner.

   -against-

Superintendent, Wyoming Correctional
Facility,

      Respondent.
-------------------------------------------------X

**MEMORANDUM & ORDER**

04 CV 3445 (SLT)

TOWNES, U.S.D.J.

Frederick Pereira petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Based on the written submissions of the parties and oral argument on August 19, 2005, and for the reasons set forth below, the petition is DENIED.

I. Facts and Procedural History

Frederick Pereira ("Petitioner") was tried in Kings County on one count of first-degree assault, one count of fourth-degree weapons possession, and related offenses that were not charged to the jury. Petitioner was accused of shooting Joseph Arneaud ("Arneaud"), a longtime acquaintance, in the face on New Year's eve 1999, causing him serious injury and permanent disfigurement. At trial, Arneaud testified that he went to see Petitioner at his restaurant on the evening of December 31, 1999, in order to ask Petitioner to rehire a friend of Arneaud's, Steve Lewis ("Lewis"). Arneaud testified that, upon arrival, Petitioner took two guns out of his desk drawer, put them up to either side of Arneaud's mouth, and made a comment about Arneaud being from San Juan and that it was good to shoot people from there. One of the guns fired,

shattering nine of Arneaud's teeth and lodging in his spine.

Petitioner told an employee to dispose of the gun and later told the police where they could find it. A second gun was never recovered, and no other witnesses at trial testified to the existence of a second gun. Petitioner took Arneaud to the hospital, where he was treated for the gunshot wound.

In his first statement to the police, Petitioner told them that Arneaud had been shot outside of the restaurant by an unknown assailant. Petitioner subsequently admitted to shooting Arneaud, but stated that it had happened while he and Arneaud were taking turns firing what he believed to be an inoperable gun at each other to see who would flinch first. In his grand jury testimony, Petitioner conceded that Arneaud had never handled or tried to shoot Petitioner's gun on the night in question, but maintained that the shooting was an accident and that he thought the gun was inoperable.

Ballistics testing indicated that the gun was operable, but that it did not fire reliably and sometimes jammed. The ballistics expert also concluded that the gun had a hair-trigger, meaning that it did not take much effort to fire the gun and that someone handling it carelessly could easily cause it to fire.

The jury convicted Petitioner of one count of assault in the first degree and one count of fourth-degree weapons possession. Petitioner was sentenced to five years imprisonment for the assault charge and one year imprisonment for the weapons charge, to be served concurrently.

Petitioner appealed his conviction to the Appellate Division, which held that the evidence presented at trial was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt and that his remaining contentions were either unpreserved for appellate review or without merit. *People v. Pereira*, 745 N.Y.S.2d 195 (App. Div. 2002).

Concurrent with his direct appeal, Petitioner filed a motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. The trial court denied Petitioner's motion by written decision dated May 2, 2002. The Appellate Division denied Petitioner's motion for leave to appeal the trial court's decision in an order dated August 20, 2002.

After hiring new appellate counsel, Petitioner moved the Appellate Division for a writ of error *coram nobis* on the grounds of ineffective assistance of prior appellate counsel. The Appellate Division denied Plaintiff's motion, *see People v. Pereira*, 759 N.Y.S.2d 397 (App. Div. 2003), and the Court of Appeals denied Plaintiff request for leave to appeal the Appellate Division's decision. *People v. Pereira*, 798 N.E.2d 357 (N.Y. 2003).

Petitioner filed a motion with the Appellate Division for an extension of time in which to file an application for leave to appeal the Appellate Division's decision affirming his conviction, which had not been requested by Petitioner's original appellate counsel. The Court of Appeals granted Petitioner's motion. Petitioner thereafter applied to the Court of Appeals for leave to appeal the affirmance of his conviction. The Court of Appeals denied Petitioner's request. *People v. Pereira*, 801 N.E.2d 431 (N.Y. 2003).

Petitioner timely filed the instant petition for habeas corpus on July 23, 2004, alleging (1) that he was denied his Sixth Amendment right to effective assistance of counsel by his initial appellate counsel and (2) that his conviction was obtained in violation of his Fifth and Fourteenth Amendment rights to the disclosure of *Brady* materials.

II.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, 341 F.3d 104 (2d Cir. 2002) (amended opinion) (district court's habeas decision that relied on precedent from the Court of Appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary*, 340 F.3d 63, 72 (2d Cir. 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Analysis of Claims

A. Ineffective Assistance of Appellate Counsel

Petitioner argues that his counsel on direct appeal was ineffective because he (1) filed an inadequate brief that made frivolous arguments, failed to raise two viable grounds for appeal, and misstated the trial record; (2) failed to consult with Petitioner regarding which claims to raise in the appellate brief; and (3) failed to seek leave to appeal to the Court of Appeals following the Appellate Division's affirmance of his conviction. Plaintiff raised this claim in his motion for a

writ of error *coram nobis*, which was denied on the merits by the Appellate Division. *Pereira*, 759 N.Y.S.2d 397. The Court of Appeals denied leave to appeal the decision. *Pereira*, 798 N.E.2d 357. This claim is therefore exhausted.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right...to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To determine this, the court applies a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. "Under AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court 'applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" *Grace v. Artuz*, 258 F. Supp. 2d 162, 174 (E.D.N.Y. 2003) (Gershon, J.) (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). This test is used to evaluate ineffective assistance of counsel claims at both the trial and appellate levels. *See Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992).

The Appellate Division's decision was not unreasonable under *Strickland*. The Supreme Court held, in a case specifically cited by the Appellate Division in its denial of Petitioner's request for a writ of error *coram nobis*, that attorneys are neither expected nor advised to present

every colorable argument on appeal: "Neither *Anders* nor any other decision of this Court suggests...that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to press those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Thus, Petitioner's contention that appellate counsel was ineffective for failing to consult with him regarding which issues to raise in the brief runs contrary to Supreme Court precedent which generally leaves the selection of grounds for appeal to counsel's professional discretion.

Nor can it be said that appellate counsel was ineffective because he ignored clearly stronger issues in favor of weaker ones, as argued by Petitioner. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."). As noted by the Second Circuit, generally "only when ignored issues are clearly stronger than those presented...will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)). Neither of the issues that Petitioner claims should have been raised on his direct appeal were clearly stronger than those that were presented.

First, the trial court did not err in permitting the prosecution to submit into evidence a portion of Petitioner's grand jury testimony given after Petitioner executed a waiver of immunity. The admitted portion, which contained Petitioner's statement that Arneaud had never tried to shoot the gun, was admissible on the People's direct case as a party admission and statement against interest contradicting Petitioner's prior statements to authorities that he and Arneaud had been taking turns firing the gun at each other when the weapon discharged. Federal Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced

by a party, an adverse party may require the introduction at that time of any other part...which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106 (1987). The Second Circuit has held that the rule of completeness embodied by Rule 106 "justif[ies] the admission of previously excluded portions of partially received documents or statements only when necessary to explain the admitted portion, to place it into context, to ensure a fair and impartial understanding of the admitted portion or to correct a misleading impression that might arise from excluding it." *United States v. Rivera*, 61 F.3d 131, 135-36 (2d Cir. 1995). Rule 106 does not require that the entire statement be admitted solely because a portion of it is.

The trial judge in this case properly enforced Rule 106. Prior to trial, the People made a motion in limine to admit several portions of Petitioner's grand jury testimony. When defense counsel objected and moved for admission of the entire testimony, the court ruled that the People could introduce the requested portions but that defense counsel could offer any other portions of the grand jury testimony that were necessary to explain or clarify the issues discussed in the People's excerpts. The People then confined their request to the following portion of Petitioner's grand jury testimony, which was read to the jury without objection from defense counsel:

> Q: Did Joseph Arnold [*sic*] ever try to shoot the gun?
> A: No. He never tried. He wanted to see, that's why I pulled the top of it.
> Q: Did you ever tell anyone that Joseph Arnold [*sic*] held the gun and tried to shoot it?
> A: No, he never shoot it.
> Q: Did you ever tell anyone that he tried to?
> A: I made a statement before while I was in the precinct when it had just happened, you know, maybe I might have said one of his hands was on the gun and he said let me try this, and I say no, let me check this first, and maybe I might have said that, but he didn't fire off the trigger.
> Q: When you said it before, you weren't telling the truth?
> A: Not that I wasn't telling the truth. At the time things happen, you know, when I go to hand it to him, at the same time his hand go, and I pull it away from him, like this.

Defense counsel did not seek to add any other portions of Petitioner's grand jury testimony to

explain or contextualize this segment. Petitioner now argues that other portions of the grand jury testimony, in which Petitioner testified that the shooting occurred accidentally as he was checking to see if the gun was loaded and in which he stated that he believed it was not loaded because he had fired it previously with no reaction, should have been admitted to give the complete story of what Petitioner said happened on the night in question. However, the standard under Rule 106 is not whether admission of the rest of the testimony would have been advantageous to Petitioner, but only whether its admission was required to correct a mistaken impression left by the admitted portion when taken out of context. In the case relied on by Petitioner, *People v. Morales*, 739 N.Y.S.2d 149, 150 (App. Div. 2002), the court held that the defendant was deprived of a fair trial where the prosecutor was permitted to introduce a redacted version of the defendant's grand jury testimony, which contained his admission that drugs were found in his bedroom but eliminated his explanation that he had no connection to the drugs and his suggestion that his son had brought the drugs into the room without his knowledge. That is not the situation here, as nothing in the remainder of Petitioner's grand jury testimony contradicted or explained Petitioner's statement that Arneaud never tried to shoot the gun. Thus, the remainder of Petitioner's grand jury testimony was not admissible under Rule 106, and was properly excluded as inadmissible hearsay.

Second, Petitioner was not denied a fair trial by virtue of the admission of the Arneaud's testimony regarding the criminal reputation of the hometown in Trinidad that he shared with Petitioner. Petitioner objects to the following portion of Arneaud's testimony, which came after the prosecutor asked Arneaud to explain his statement that the Petitioner had put two guns to the side of his mouth and said "you said you from San Juan and it's good to shoot you guys" before the gun discharged:

> Q. Mr. Arneaud, what did the defendant mean by that?
> MR. STUTMAN: Objection.
> THE COURT: Sustained. He can't read someone else's head. You could ask the witness what his understanding was, what did he mean by that.
> Q. Mr. Arneaud, what did you understand the defendant to mean by saying that?
> A. Well, the defendant and I, we both come from the same area in Trinidad, in San Juan, in the 60s and 70s, and San Juan was an area that was –
> MR. STUTMAN: Objection.
> THE COURT: Overruled, I will allow it.
> A. (Cont'g) – San Juan was an area that was, you know, had a very notorious reputation for crimes and criminals and all that stuff.
> MR. STUTMAN: Objection. Ask that that be stricken.
> THE COURT: I will allow it. Of course, that's not for the truth of the matter asserted, but just for the witness' understanding of what the meaning of that phrase is.

Petitioner argues that this testimony was irrelevant and unfairly prejudicial and could have caused the jury to convict him under a propensity theory based on his background and association with unsavory creatures. This argument is unavailing. The testimony was relevant because it went to the Petitioner's state of mind at the time of the shooting. Moreover, this testimony was not offered or used by the prosecutor to show that Petitioner intentionally shot Arneaud because he was a criminal from San Juan -- the People conceded throughout the trial and in summation that the Petitioner and Arneaud were on good terms and that there was no reason to believe that the Petitioner meant Arneaud any harm. Finally, it is difficult to see how a jury could possibly have held the reputation of Petitioner's hometown against him when Arneaud was also admittedly from the same hometown. In sum, the testimony was not so prejudicial as to deny Petitioner a fair trial.[1]

Petitioner's final argument on this point is that appellate counsel was ineffective for failing to seek leave to appeal the Appellate Division's affirmance of his conviction to the Court

---

[1] Petitioner also argues that the prosecutor's comments in summation regarding this testimony constituted misconduct. However, since Petitioner's initial appellate counsel raised this claim on direct appeal, Petitioner cannot now reargue this issue as part of his ineffective assistance of counsel claim.

of Appeals. There is no merit to this claim. In *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982), the Supreme Court held that a habeas petitioner cannot claim ineffective assistance of counsel based on an attorney's failure to apply for leave to file a discretionary appeal. The Court noted, citing *Ross v. Moffitt*, 417 U.S. 600 (1974), that the right to counsel only extends to the first state appeal as of right and held that where there is no constitutional right to counsel, there can be no claim of ineffective assistance of counsel for habeas purposes. *Id.* at 587; *see also Chalk v. Kuhlmann*, 311 F.3d 525, 529 (2d Cir. 2002) (holding that the New York state requirement that counsel prepare and file a petition for leave to appeal to the Court of Appeals if a defendant requests it does not extend the Constitution's guarantee of counsel, nor the availability of an ineffective assistance of counsel claim, to such proceedings). In any event, Plaintiff has suffered no prejudice from the failure of his initial appellate counsel to file for leave to appeal to the Court of Appeals, as his subsequently retained counsel obtained an extension of time and then timely filed for leave to appeal, which the Court of Appeals subsequently denied. *Pereira*, 801 N.E.2d 431.

Thus, Plaintiff is not entitled to a writ of habeas corpus for ineffective assistance of appellate counsel.

    B.    <u>Brady Claim</u>

Petitioner contends that the People violated the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the audiotaped statement of Steven Lewis to the defense prior to his trial testimony. This claim is unexhausted. The exhaustion requirement requires the petitioner to have "fairly presented" to the state courts "both the factual and legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003). The

key inquiry in the exhaustion analysis is whether "the nature or presentation of the claim [was] likely to alert the court to the claim's federal nature." *Daye v. Attorney General*, 696 F.2d 186, 192 (2d Cir. 1982) (*en banc*). Apart from citing a specific constitutional provision, which clearly alerts the state courts to the federal dimensions of the claim, a petitioner may also be considered to have fairly presented his claim to the state courts where he (a) relies on pertinent federal or state cases employing constitutional analysis, (b) asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (c) alleges a pattern of facts that is well within the mainstream of constitutional litigation. *Ramirez v. AG*, 280 F.3d 87, 94-95 (2d Cir. 2001) (citing *Daye*, 696 F.2d at 194).

In the instant case, while Petitioner raised the issue of the non-disclosure of Lewis' statement in all of his state court filings, he consistently framed his argument as a claim that the People had failed to fulfill the discovery obligations imposed by *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961), codified at N.Y. C.P.L. § 240.45, by neglecting to turn over a statement by a witness they intended to call at trial. A *Rosario* violation is an issue of state law that is not cognizable on habeas review. *See Hoffman v. Kuhlmann*, 2003 U.S. Dist. LEXIS 22603, at *36 (E.D.N.Y. Dec. 1, 2003) (Weinstein, J.). Only in his reply affirmation on his section 440.10 motion to vacate the judgment of conviction did Petitioner apprise the court of the federal nature of his claim by alternatively postulating that the statement constituted *Brady* material because it supported Petitioner's statement that the victim handled the gun prior to the shooting. *See Edkin v. Travis*, 969 F. Supp. 139, 142 (W.D.N.Y. 1997) (mere mention of the term *Brady* sufficient to alert court to constitutional nature of claim). However, the Second Circuit has held that a federal claim cannot be considered to be fairly presented to the state courts for exhaustion purposes where it is raised for the first time in a reply brief. *See Lurie v. Wittner*, 228 F.3d 113, 124 (2d

Cir. 2000). Moreover, even if Petitioner's citation to *Brady* in his reply brief was sufficient to fairly present his federal claim to the trial court, he abandoned the claim by failing to raise it in his leave application to the Appellate Division, where he instead repeated his *Rosario* argument from his direct appeal and initial motion to vacate briefs. The claim is therefore unexhausted.[2]

In the past, a court was required to dismiss a state prisoner's federal habeas petition if the prisoner did not exhaust available state remedies as to all of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1989). "This exhaustion requirement is...grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Pursuant to AEDPA, however, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims - so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of heabeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). While Section 2254(b)(2) does not provide a standard for determining when it is appropriate to dismiss an unexhausted claim on the merits, courts within this circuit have generally done so only where it is clear that the petitioner is not entitled to relief. *See Berger v. Stinson*, 97 F. Supp. 2d 359, 364 (W.D.N.Y. 2000); *Norman v. New York*, 1999 U.S. Dist. LEXIS 16762, at *5 (S.D.N.Y. Oct. 29, 1999) ("In the interests of comity, an unexhausted claim should not be dismissed on the merits unless it is obvious, based on established law and a relatively quick reading of the record, that the claim does not raise any issue upon which a habeas court may grant relief."). In this case, the Court finds Petitioner's *Brady* claim to be clearly meritless.

---

[2] Petitioner summarily disposes of the exhaustion issue by stating that the People "expressly waive[d]" the exhaustion requirement. The Court finds no such waiver, express or otherwise.

*Brady* imposes a constitutional duty on the prosecution to disclose material, exculpatory evidence to the defendant. *Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 154 (1972). The portion of Lewis' audiotaped statement that Petitioner points to as exculpatory is the following exchange, which took place as the People were questioning Lewis regarding what happened after he and Joseph (Joey) Arneaud arrived at Petitioner's (referred to as Fred in the colloquy) restaurant on the night of the shooting:

Q: And when you got there, what did you and Joey Arnold [*sic*] do?
A: We went downstairs to the basement, straight to the office, – to Fred, right –
Q: To Fred's office?
A: To Fred's office and sat there for awhile – about two minutes after, I, um, --
Q: What did you see Fred do?
A: What did I see Fred do?
Q: Yes?
A: Went for a gun.
Q: Where did he go for the gun?
A: In a drawer.
Q: And where was that drawer with respect to where Fred was?
A: Like right, right in that same area where he standin'.
Q: Right in front of him?
A: Yeah.
**Q: And where was Joey when Fred did that?**
**A: (Inaudible) pass it to him.**
Q: Did you see the gun?
A: Yes.
Q: And you said Joey was just opposite Fred?
A: Yeah.
Q: What did you do when you saw Fred with the gun?
A: I went outside.

(emphasis added).

Petitioner has done little more than speculate that the inaudible portion of Lewis' statement, if audible, would indicate that Arneaud handled the gun prior to the shooting. Even assuming that the cited language is not the result of an error in transcribing the answer "opposite to him" (which appears to be the most likely explanation considering the prosecution's query

three lines later), the terms "it" and "him" are ambiguous; there is nothing about the sentence as written that should have put the prosecutor on notice that he was in possession of exculpatory evidence which he had a duty to disclose. *See United States v. Bagley*, 473 U.S. 667 (1985) (holding that *Brady* does not require a prosecutor to "deliver his entire file to defense counsel... but only to disclose [material] evidence favorable to the accused").

Moreover, this singular line in Lewis' statement, even if favorable to Petitioner, cannot be considered "material" for *Brady* purposes. Exculpatory evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Bagley*, 473 U.S. at 682); *see also United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (holding that "a *Brady* violation occurs only where the government suppresses evidence that could reasonably have been taken to put the whole case in such a different light as to undermine confidence in the verdict") (internal quotation marks and citation omitted). Disclosure of this vague and incomplete sentence fragment would not have added anything significant to the testimony that was already adduced at trial, which included statements made by Petitioner and by Petitioner's brother that Arneaud handled the gun and even pointed the weapon at Petitioner on the night in question, a story that was recanted by Petitioner in his grand jury testimony. There is no reasonable probability that disclosure of Lewis' statement would have changed the outcome of Petitioner's trial.

Finally, even assuming arguendo that Lewis' statement constituted material, exculpatory evidence, the People did not suppress it. "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (quoting *United*

*States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)) (internal quotation marks omitted). This is because the "purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him." *U.S. v. Ruggiero*, 472 F.2d 599, 604 (2d Cir. 1973). Here, defense counsel knew that Lewis had given a tape-recorded statement to the prosecutor, and even confirmed that fact with Lewis when he testified as a defense witness at trial. Thus, Petitioner had equal access to any potentially exculpatory testimony Lewis may have had to offer. Under these circumstances, any failure to disclose cannot be deemed "suppression" for *Brady* purposes. *See United States v. Paulino*, 299 F. Supp. 2d 332, 345 (S.D.N.Y. 2004) (holding that a phone conversation between the government and a witness did not constitute *Brady* material where the defendant had equal access to the witness and knew that the conversation had taken place); *see also Zackson*, 6 F.3d at 918; *LeRoy*, 687 F.2d at 618-19. Thus, there was no *Brady* violation in this case.

IV.  Conclusion

The petition for a writ of habeas corpus is denied. Since Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

**SO ORDERED.**

/s/

SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
       August 19, 2005